# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **RUBEN CEDILLO, et al.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 3:13-cv-00869** |
| **v.** | ) | |
| | ) | **Judge Sharp** |
| **TRANSCOR AMERICA, LLC, et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Before the Court is Defendant TransCor America, LLC's ("TransCor" or "Defendant") Motion for Judgment on the Pleadings. (Docket No. 54). Plaintiffs, inmates transported by TransCor, filed a Response in Opposition to the Motion (Docket No. 57), to which Defendant replied (Docket No. 59). For the reasons set forth below, Defendant's Motion will be granted.

## I. SUMMARY OF THE FACTS

Plaintiffs in this class action case are inmates transported by Defendant for a period of more than 59 continuous hours on or after February 14, 2006, and who were members of the class certified in <u>Schilling v. TransCor America, LLC</u>, 2010 WL 583972 (N.D. Cal. Feb. 16, 2010). The proposed class is estimated to include approximately 4,900 persons. (Docket No. 1 at 12). The Complaint lists subclasses of inmates transported between 59 and 67 continuous hours (represented by named Plaintiffs Ruben Cedillo, Alonzo Cleaves, and Terry Houston), between 67 and 95 continuous hours (represented by named Plaintiffs Justin Wright, John Greenmeier, and John Roussel), and more than 95 continuous hours (represented by named

Plaintiffs Craig Arno and Leonard Hugall), as well as subclasses of inmates "whose claims are timely under California law, including the tolling provisions of California Code of Civil Procedure sections 352 and 352.1." (Id.).

Defendant is TransCor, a Tennessee corporation and wholly owned subsidiary of Corrections Corporation of America ("CCA").[1]  Between 1990 and late 2008, TransCor contracted with state and federal law enforcement agencies to facilitate prisoner transfers and extradition for prisoners arrested in one jurisdiction but legally sought in another.  (Docket No. 58-4 at 9).  TransCor ceased providing extradition transport services in October 2008 and, since then, has reoriented its business model for shorter-distance transfers focused on hub locations (for local court appearances and medical transfers) and between CCA facilities.  (Docket No. 58-4 at 9).

As noted above, this case follows a prior class action, Schilling v. TransCor America, LLC (hereinafter "Schilling").  There, the following class was certified:

> All pretrial detainees and prisoners who were transported by TransCor America LLC, its agents and/or employees between February 14, 2006 and the present, and who were forced to remain in restraints in the transport vehicle for more than 24 hours without being allowed to sleep overnight in a bed.  The class includes pretrial detainees and prisoners who were removed from one transport vehicle and placed directly onto another, without being housed overnight, whose combined trip lasted more than 24 hours.  The class only includes those pretrial detainees and prisoners who were transported by TransCor on behalf of a state agency, and does not include pretrial detainees and prisoners who were transported on behalf of a federal agency.

---

[1] Plaintiffs also name as Defendants "Does 1 through 100," who Plaintiffs refer to as "agents and/or employees of defendant TransCor" whose names and identities were unknown at the time of filing. (Docket No. 1 at 4).

<u>Schilling</u>, 2010 WL 583972, at *12 (Feb. 16, 2010).[2]

In a subsequent order, the Northern District of California certified the following claims for class treatment: "[P]laintiffs' Fourth, Eighth and Fourteenth Amendment claims regarding the use of restraints, lack of overnight rest, lack of access to sanitation facilities and inadequate provision of food during transportation." <u>Schilling</u>, 2012 WL 2792688, at *1 (N.D. Cal. July 9, 2012).

On August 8, 2012, the <u>Schilling</u> court granted Defendant's motion for partial summary judgment, finding that "as a matter of law, the conditions of confinement challenged by plaintiffs – in the context of transportation of prisoners, over a period of 24 hours or more – did not, on a class-wide basis and without more, constitute unconstitutional deprivations under the Eight or Fourteenth Amendment." 2012 WL 4859020, at *1 (N.D. Cal. Oct. 11, 2012). A month later, the court denied Plaintiffs' motion to amend/correct the class certification order, which requested that the court "certify subclasses of plaintiffs 'based on the number of days an inmate was continuously transported' by defendants and to add four subclass representatives." <u>Id.</u> The court emphasized that "there was a determination of *no liability* for the class as defined by the Court on plaintiffs' request." <u>Id.</u> (emphasis in original). Furthermore,

> plaintiffs wholly failed to argue or provide evidence … that subclass differentiation might be appropriate … There was no evidence or expert opinion that the Court could rely on to, for example, find that a constitutional violation had been demonstrated for class members who were subject to the complained of conditions for other periods of time, such as two or more days.

<u>Id.</u> The court concluded,

---

[2] The <u>Schilling</u> court also certified a subclass under California's Bane Act. <u>See</u> <u>Schilling</u>, 2010 WL 583972, at *12 (Feb. 16, 2010).

> [t]he potential need to distinguish among subclasses should have
> been clear since the inception of this case. The fact that the impact
> of the conditions-of-confinement complained of changes over time
> is obvious; this is likely why plaintiffs suggested a class consisting
> of inmates subjected to these conditions for 24 hours, and not, for
> example, 18 or 20 hours. As defendants point out, plaintiffs have
> had discovery in their possession since 2009 showing the duration
> of the trips for each class member. Plaintiffs made a strategic
> decision to seek class-wide relief for one class of all inmates
> transported for 24 hours or more. The Court is wary of allowing
> amendment at this juncture simply because plaintiffs' strategy did
> not work.

Id. at *2. However, the court did note that "Defendants have admitted that the claims of individuals who were continuously transported for more than 24 hours and one minute survive the Court's motion for summary judgment … Those individuals, therefore, are presumably free to file an action on their own behalf or on behalf of a class of those similarly situated." Id. at *2 n.6.

In January 2013, the class was notified of the summary judgment ruling by publication in the Prison Legal News and the Parties reached a settlement. The Parties' agreement contemplated settlement with prejudice solely with respect to the named Plaintiffs' claims, however this distinction was not included with the Schilling court's order dismissing the case with prejudice on January 31. Plaintiffs assert that through no fault on their part, a stipulation requesting the court amend its dismissal order to conform with the Parties' settlement agreement was not filed until April 1, 2013. The Schilling court granted this request on April 4.

On April 8, 2013, the current named Plaintiffs filed this class action Complaint in the Northern District of California. (Docket No. 1). The court granted TransCor's motion to transfer venue to the Middle District of Tennessee, finding that while either venue was generally proper, Tennessee was more convenient as the location of TransCor's headquarters, non-party

witnesses, and relevant documents.  (Docket No. 24).  The case was transferred to this Court on August 29, 2013.

Plaintiffs' Complaint reasserts the allegations initially set forth in <u>Schilling</u>, namely that Defendant TransCor maintained a "policy and practice to strip search all inmates and restrain them, regardless of their security classification, in handcuffs, waist or 'belly' chains, leg irons, interconnects, and black boxes."  (Docket No. 1 at 5-6).  Plaintiffs were placed in TransCor's transport vehicles, the interior of which was divided into steel cages, and made to remain there, without adequate bathroom access and no opportunity to wash their hands or shower.  They were typically chained to each other in pairs or, when allowed to use the onboard chemical toilet, chained to a corrections officer, which made closing the bathroom door impossible.  During transport, Plaintiffs were not given access to beds for overnight rest.  In fact, Plaintiffs claim TransCor instructed inmates to remain upright during travel so they would not be injured in the event of an unexpected turn or stop of the transport vehicle.  TransCor vehicles are not outfitted with seat belts or sleeping berths.

Extradition trips in the custody of TransCor generally deviated from a direct route due to utilization of a "'hub and spoke system' of inmate transportation that resulted in some inmates remaining in the transport vehicle for several days."  (Docket No. 57 at 4).  This system "consolidated inmates located in certain regions on a single bus route (the spoke) by transporting them to hub locations in California, Texas, Kentucky and Florida."  (Docket No. 58-4 at 9).

The Complaint illustrates the effects of the hub and spoke system on inmate travel time through the experience of the named Plaintiffs.  For instance, had the route been direct, Plaintiff Ruben Cedillo should have covered the 60 miles from the Claremont Custody Center in Coalinga, California, to Fresno County Jail in Fresno, California, in an hour and ten minutes.

However, Defendants' route through sixteen California cities took 59.2 hours of continuous travel. During that time, Cedillo could not stretch his limbs or lay down. When the guards stopped for showers, he requested one as well. In response to his request, Plaintiffs claim, TransCor employees sprayed him with Lysol disinfectant. The Complaint alleges that Cedillo and other named Plaintiffs continue to experience lasting pain and injury from the conditions of their confinement and duration in TransCor custody.

Plaintiffs claim Defendant used excessive force against Plaintiffs and deprived Plaintiffs, and all those similarly situated, of "the minimal civilized measure of life's necessities, including sleep, exercise, hygiene and medical care" in violation of their rights under the Fourth, Eighth, and Fourteenth Amendments to be free from unlawful conditions of confinement, the use of excessive force, and cruel and unusual punishment. (Docket No. 1 at 12-13).

## II. <u>APPLICATION OF LAW</u>

A Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure "is appropriately granted 'when no material issue of fact exists and the party is entitled to judgment as a matter of law.'" See <u>Tucker v. Middleburg–Legacy Place</u>, 539 F.3d 545, 549 (6th Cir. 2008). In making that determination, the Court utilizes the standards applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Roth v. Guzman</u>, 650 F.3d 603, 605 (6th Cir. 2011). Thus, "[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." <u>JP Morgan Chase Bank, N.A. v. Winget</u>, 510 F.3d 577, 581 (6th Cir. 2007).

### A.  Plaintiffs' Class Claims

The parties advance a number of arguments regarding the viability of Plaintiffs' class claims, including arguments about class action tolling, judicial estoppel and waiver, and res judicata.  Because the Court agrees with Defendant that res judicata ultimately bars Plaintiffs' class claims in this case, the following discussion is limited to that topic.

The doctrine of res judicata is often used broadly to encompass both claim preclusion (res judicata) and issue preclusion (collateral estoppel).  J.Z.G. Res., Inc. v. Shelby Ins. Co., 84 F.3d 211, 214 (6th Cir. 1996).  Under claim preclusion, a final judgment on the merits bars any and all claims by the parties or their privies based on the same cause of action, as to every matter actually litigated, as well as every theory of recovery that could have been presented.  Id.  Under issue preclusion, once an issue actually is determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action when used against any party to the prior litigation.  Mont. v. United States, 440 U.S. 147, 152-54 (1979).  Defendants contends that claim preclusion applies here and the Court agrees.

Because the initial case was filed in – and judgement rendered by – a federal court, "federal law determines the effects under the rules of res judicata."  RESTATEMENT (SECOND) OF JUDGMENTS § 87 (1982); see also Remus Joint Venture v. McAnally, 116 F.3d 180, 184 n. 5 (6th Cir. 1997).  "'[R]es judicata has four elements: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.'"  Rawe v. Liberty Mut. Fire Ins. Co., 462 F.3d 521, 528 (6th Cir. 2006) (citing Kane v. Magna Mixer Co., 71 F.3d 555, 560 (6th Cir. 1995)).  The Court addresses each element in turn.

<u>Final Adjudication on the Merits</u>

The claims at issue here have been subject to a final judgment on the merits. The <u>Schilling</u> court granted Defendant's motion for summary judgment on the class claims, and summary judgment constitutes a final judgment on the merits with a preclusive effect. <u>Heike v. Cent. Michigan Univ. Bd. of Trustees</u>, 573 F. App'x 476, 480 (6th Cir. 2014) ("The grant of summary judgment most certainly constitutes a final adjudication on the merits for purposes of claim preclusion.") (citing <u>Ohio Nat'l Life Ins. Co. v. United States</u>, 922 F.2d 320, 325 (6th Cir.1990)).

Plaintiffs argue that because the previous class definition forced the <u>Schilling</u> court to analyze transport periods of twenty-four hours and one minute, "[t]here was no 'final decision on the merits' of the claims of absentee class members such as Plaintiffs, who were transported for significantly longer than 24 hours and one minute." (Docket No. 57 at 16). Plaintiffs emphasize that the <u>Schilling</u> court "explicitly reserved judgment on the question of whether the conditions alleged, if 'imposed for periods exceeding 24 hours' would constitute cruel and unusual punishment," and concluded "it could not adjudicate any class members' claims in excess of a '24-hour plus one minute period' due to the class definition." (<u>Id.</u> at 17).

These arguments are unavailing. The class definition may have forced the <u>Schilling</u> court to limit its *analysis* to the lowest common denominator, but the ultimate *decision* on summary judgment applied to the class at large.[3] Such a judgment is final and binding on all members of

---

[3] <u>See</u> Docket No. 55-6 at 1 (granting summary judgment "as to Plaintiffs' class claims"), and at 8 ("As a class-wide matter, however, and on the record presented, the Court does not find that plaintiffs have established or can establish a constitutional violation."). <u>See also</u> Docket No. 58-3 at 12, ¶ 51.v (The

the class: "Absent unnamed members of a class are bound by a judgment rendered in a properly certified class action." Chandler v. Corr. Corp. of Am., 41 F. App'x 836, 837 (6th Cir. 2002) (citing Shults v. Champion Int'l Corp., 35 F.3d 1056, 1058 (6th Cir.1994)). While those class members who endured significantly longer transport periods have been disadvantaged by the Schilling Plaintiffs' decision to lump them in with those who suffered shorter transports, they are nonetheless bound by the adverse judgment.

<u>Same Parties or Their Privies</u>

The second element of res judicata is easily met here as there is an identity of parties. The TransCor was the primary Defendant in Schilling and all of the current Plaintiffs, both named and absent, were members of the certified Schilling class.

<u>Issues Actually Litigated or Issues that Should Have Been Litigated</u>

The third element of res judicata "not only prohibits parties from bringing claims they already have brought, but also from bringing those claims they *should* have brought." Heike v. Cent. Michigan Univ. Bd. of Trustees, 573 F. App'x 476, 482 (6th Cir. 2014) (emphasis in original); see also Rawe v. Liberty Mut. Fire Ins. Co., 462 F.3d 521, 528 (6th Cir. 2006). Thus, "plaintiffs cannot avoid the effects of claim preclusion by merely repacking their grievances into alternative theories of recovery or by seeking different remedies." Heike, 573 F. App'x at 482 (citing Rawe, 462 F.3d at 529). As they themselves assert, "Plaintiffs are advancing the *same theory*, on behalf of a subset of the Schilling plaintiffs, and a subset of the Schilling facts – transactions that lasted substantially longer than the 'lowest common denominator' of 24 hours and one minute at issue in Schilling." (Docket No. 57 at 19) (emphasis in original). The only

_____

Schilling Complaint, setting forth suggested contents of notice to putative class members, including that they will be "bound by any judgment on the common issues adverse to the class.").

difference is that in the instant matter, Plaintiffs have repackaged the <u>Schilling</u> class members into four subclasses.

However, the Court cannot ignore that the now-offered subclasses could have been brought in the prior action and agrees with the <u>Schilling</u> court that the "potential need to distinguish among subclasses should have been clear since the inception of this case." 2012 WL 4859020, at *2 (Oct. 11, 2012).[4] The proposed subclasses currently before the Court were not litigated in the prior litigation because the <u>Schilling</u> Plaintiffs defined the class broadly to maximize its size. In so doing, Plaintiffs chose not to litigate the issue of prisoners who had been transported for periods significantly longer than 24 hours. Plaintiffs' late-stage attempt to amend their <u>Schilling</u> complaint to add the subclasses now at issue only underscores that the subclasses could have been brought in the previous action. As the <u>Schilling</u> court said when denying the amendment, "Plaintiffs made a strategic decision to seek class-wide relief for one class of all inmates transported for 24 hours or more. The Court is wary of allowing amendment at this juncture simply because plaintiffs' strategy did not work." 2012 WL 4859020, at *3 (Oct. 11, 2012). Because the subclasses now before the Court could – and should – have been litigated as part of the <u>Schilling</u> case, the third element of the res judicata analysis is met.

<u>Identity of Causes of Action</u>

Fourth and finally, to bar a claim under the doctrine of res judicata, there must also be an "identity of the causes of action." <u>Westwood Chem. Co.</u>, 656 F.2d at 1227. "The now-accepted test in preclusion law for determining whether two suits involve the same claim or cause of

---

[4] For example, Plaintiffs relied on <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1258 (9th Cir. 1982), throughout the <u>Schilling</u> litigation and continue to do so now. That case, which discusses importance of the length of time of a constitutional deprivation, should have alerted Plaintiffs to the distinct need for subclasses in advancing their claims. Moreover, the <u>Schilling</u> Plaintiffs knew how to implement Rule 23's subclass mechanism when they found it strategic: they pleaded and certified a subclass of prisoners transported in the State of California.

action depends on factual overlap, barring 'claims arising from the same transaction.'" United States v. Tohono O'Odham Nation, ––– U.S. ––––, 131 S. Ct. 1723, 1730 (2011) (citation omitted). Two lawsuits are the same "if they are based on substantially the same operative facts, regardless of the relief sought in each suit." Id. at 1731.

Plaintiffs did not allege any new material facts in their second complaint. To the contrary and as noted above, Plaintiffs have characterized the underlying facts in this case as a "subset" of the Schilling facts. (Docket No. 57 at 19). Plaintiffs also use the same statutory mechanism to raise the same constitutional claims about the same deplorable conditions of prisoner transport. The difference here is not one of fact, but of strategy.

This Court is mindful "that neither collateral estoppel nor res judicata is rigidly applied." Bronson v. Bd. of Ed. of City Sch. Dist. of Cincinnati, 525 F.2d 344, 349 (6th Cir. 1975) (internal quotation marks and citation omitted). But just as the Schilling court concluded that Plaintiffs sought to reform their strategy too late and denied their motion to amend the complaint to include subclasses, this Court agrees that allowing Plaintiffs a second bite at the apple would be inappropriate. The doctrine of res judicata therefore bars Plaintiffs' class claims.

## B.    Plaintiffs' Individual Claims

The Parties and the Schilling court have made clear that the individual claims of absent class members survived the termination of the Schilling litigation. See, e.g., Docket No. 55 at 10 n.7 (Defendant's Motion for Judgment on the Pleadings) ("The individual Plaintiffs in Cedillo are asserting . . . individual claims [that] are outside the scope of the Schilling court's summary judgment order."); Schilling v. TransCor America, LLC, 2012 WL 4859020, at *3 (Oct. 11, 2012) ("Defendants have admitted that the claims of individuals who were continuously transported for more than 24 hours and one minute survive the Court's motion for summary

judgment."). TransCor has also conceded that these individual claims were tolled for at least some portion of the <u>Schilling</u> litigation. <u>See</u> Docket No. 55 at 17 ("TransCor does not dispute for purposes of this Motion that the *granting* of class certification coupled with a liability ruling *adverse to the class* in Schilling warranted a limited period of tolling for the individual claims of class members to effectuate the purposes of Rule 23.") (emphasis in original). Yet determining and applying the proper statute of limitations to each of the individual claims raises nuanced questions of both federal and state law.

As set forth below, the Court finds that the applicable statute of limitations for each Plaintiff's claim is the law of the state in which the Plaintiff's trip with TransCor terminated. Put another way, Plaintiffs' claims are governed by the laws of the state in which TransCor deposited them. Additionally, the individual Plaintiffs' claims were tolled from the commencement of the <u>Schilling</u> litigation until the <u>Schilling</u> court's October 11, 2012 order denying amendment to the certification order. Applying the proper statute of limitations and deducting the time tolled by <u>Schilling</u>, the Court finds that only Plaintiff Houston's individual claim is time-barred.

<u>Applicable Statute of Limitations</u>

The text of Section 1983 does not specify a statute of limitations. The Supreme Court has accounted for this absence by directing that "a State's personal injury statute of limitations should be applied to all § 1983 claims." <u>Owens v. Okure</u>, 488 U.S. 235, 240-41 (1989) (citing <u>Wilson v. Garcia</u>, 471 U.S. 261, 280 (1985)). Here, determining the applicable Section 1983 statute of limitations is further complicated by the fact that the individual Plaintiffs' injuries arose in six different states, which have statutes of limitations of varying lengths.

As a threshold matter, the fact that this case originated in the Northern District of California has little bearing on the statute of limitations analysis. Both the Sixth and Ninth

Circuits look to the statute of limitation of the state in which the claim arose when presented with Section 1983 claims.  See Kuhnle Bros., Inc. v. Cnty. of Geauga, 103 F.3d 516, 519 (6th Cir. 1997) ("[T]he proper limitations period for a § 1983 action is the limitations period for personal injury actions in the state in which the § 1983 claim arises."); Faile v. Geary, 958 F.2d 376 (9th Cir. 1992) ("Federal courts apply the statute of limitations of the state in which the claim arises for 42 U.S.C. § 1983 claims.").  A Section 1983 claim arises "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief."  Wallace v. Kato, 549 U.S. 384, 388 (2007).  As has been made clear by the history of this case, the length of each Plaintiff's trip with Defendants is an integral aspect of his claim.  (Docket Nos. 55-6, 55-8). It follows that a Plaintiff's cause of action is only complete at the end of the trip and his claim "arises" in the terminus state.

The relevant statute of limitations is therefore that of the state in which each Plaintiff's trip with Defendants ended.  The states and applicable statutes of limitations are: California/two years for Plaintiffs Cedillo and Houston; New Jersey/two years for Plaintiffs Greenemeier and Arno; South Carolina/three years for Plaintiff Cleaves; New York/three years for Plaintiff Wright; Wisconsin/six years for Plaintiff Roussell; and Michigan/three years for Plaintiff Hugall.

Tolling of the Statute of Limitations

Class action or "American Pipe" tolling applies to Section 1983 class action lawsuits brought in federal courts.[5]  Chardon v. Fumero Soto, 462 U.S. 650, 661 (1983).  Under the American Pipe doctrine, the commencement of a class action lawsuit "suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the

_____

[5] American Pipe tolling derives its name from the Supreme Court's decision in American Pipe & Construction Co. v. Utah, 414 U.S. 538, 540 (1974).

suit been permitted to continue as a class action." <u>Crown, Cork & Seal Co. v. Parker</u>, 462 U.S. 345, 353-54 (1983).  The Court must again look to state law to determine the effect of <u>American Pipe</u> tolling and whether such tolling suspended, renewed, or extended the applicable statute of limitations.  <u>Chardon</u>, 462 U.S. at 661 (applying Puerto Rico's renewal rule to restart the statute of limitations upon the expiration of <u>American Pipe</u> tolling in a Section 1983 action).  In all six of the states at issue here, tolling generally suspends rather than renews the statute of limitations.[6]

The final step, then, is to determine how long the <u>Schilling</u> litigation suspended the applicable statutes of limitations.  The purpose of <u>American Pipe</u> tolling is to protect the class action procedure and its "promotion of efficiency and economy of litigation."  <u>Crown, Cork & Seal Co. v. Parker</u>, 462 U.S. 345, 349 (1983).  Tolling advances this purpose by allowing unnamed class members to "rely on the named plaintiffs to press their claims," <u>id.</u> at 353, thereby preventing "a needless multiplicity of actions," <u>id.</u> at 361.  The advantages of tolling therefore disappear when class members may no longer rely on the class action mechanism and must take up the banner themselves.

This case is distinct from the typical <u>American Pipe</u> scenario insofar as the <u>Schilling</u> court actually *certified* the class before ultimately deciding against it on the merits.  Plaintiffs are therefore correct to analogize this case to <u>Taylor v. United Parcel Service, Inc.</u>, 554 F.3d 510 (5th Cir. 2008) and <u>Edwards v. Boeing Vertol Co.</u>, 717 F.2d 761 (3d Cir. 1983), where the Third and Fifth Circuits held that <u>American Pipe</u> tolling applied to a certified class until a final decision

---

[6] <u>See</u> <u>Falk v. Children's Hosp. Los Angeles</u>, 188 Cal.Rptr.3d 686 (Cal. Ct. App. 2015), <u>review filed</u> (July 30, 2015); <u>Staub v. Eastman Kodak Co.</u>, 726 A.2d 955, 967 (N.J. Super. Ct. App. Div. 1999); <u>Warren Consol. Sch. v. W.R. Grace & Co.</u>, 518 N.W.2d 508, 511 (Mich. Ct. App. 1994); <u>Cullen v. Margiotta</u>, 811 F.2d 698, 719-20 (2d Cir. 1987) <u>overruled on other grounds</u> <u>Agency Holding Corp. v. Malley–Duff & Assocs., Inc.</u>, 483 U.S. 143 (1987); S.C. Code Ann. § 15–3–540(1); Wis. Stat. Ann. § 893.13.

on the merits, including any appeal. As the Fifth Circuit stated in Taylor, class members were "entitled to assume that the class representatives continued to represent [them] and protect [their] interests in appealing the order dismissing the class claims on the merits." Taylor v. United Parcel Serv., Inc., 554 F.3d 510, 521 (5th Cir. 2008). Applying the logic of Taylor and Edwards to the policies underlying American Pipe tolling, it is clear that the critical point is when unnamed class members are no longer entitled to rely on the class representatives.

The Court finds that unnamed class members were no longer entitled to rely on the Schilling class representatives after the Schilling court denied the plaintiffs' motion to amend/correct the certification order on October 11, 2012. See Schilling v. TransCor America, LLC, 2012 WL 4859020, at *1 (N.D. Cal. Oct. 11, 2012). By that point, the Schilling court had already ruled on the merits of the class claims when granting Defendants' motion for summary judgment in August 2012, a ruling that the Schilling Plaintiffs did not appeal. In denying the Schilling Plaintiffs' motion to amend/correct the certification order – another ruling that the Schilling Plaintiffs did not appeal – the Schilling court cemented the end of the class claims such that unnamed class members could no longer rely on the class action vehicle to prosecute their claims. Accordingly, the Schilling litigation tolled the claims of unnamed and absent class members from February 14, 2008 until October 11, 2012.[7]

The statute of limitations again began to run on the individual claims at issue here on October 12 and ran until Plaintiffs filed this action on April 8, 2013, a period of 178 days. Only Plaintiff Houston had fewer than 178 days remaining on his statute of limitation at the time this

---

[7] Plaintiffs make a last-minute request for equitable tolling because notice of the adverse Schilling rulings did not go out until January 2013. (Docket No. 57 at 25). Yet Plaintiffs fail to present any evidence that they had no actual knowledge of the adverse rulings until that time. In the absence of any such evidence, the Court sees no basis for granting equitable relief.

case was filing.[8]  Accordingly, while Plaintiff Houston's individual claims are time-barred, the claims of the other seven Named Plaintiffs remain timely.

### III.    CONCLUSION

Because res judicata bars relitigation of the class claims, Defendant's Motion for Judgment on the Pleadings will be granted as to those claims.  Plaintiff Houston's individual claim is dismissed as time-barred.  The individual claims of the other Named Plaintiffs are timely and the Motion is denied insofar as it seeks to dismiss them.  An appropriate order will enter.

_Kevin H. Sharp_
_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

---

[8] For the Court's calculation of the statute of limitations, see the chart in Appendix A, attached hereto.

## APPENDIX A

| Plaintiff | Terminus State* | Statute of Limitations ("SOL") | Date Claim Accrued** | Time Left on SOL at Commencement of <u>Schilling</u> Litigation*** | Timeliness of Current Claim |
|---|---|---|---|---|---|
| Ruben Cedillo | California | 2 Years/730 Days | November 3, 2006 | 262 Days | Timely |
| Alonzo Cleaves | South Carolina | 3 Years/1095 Days | September 10, 2007 | 938 Days | Timely |
| Terry Houston | California | 2 Years/730 Days | June 11, 2006 | 117 Days | Time-Barred |
| Justin Wright | New York | 3 Years/1095 Days | June 12, 2006 | 483 Days | Timely |
| John Greenemeier | New Jersey | 2 Years/730 Days | September 17, 2006 | 215 Days | Timely |
| John Roussell | Wisconsin | 6 Years/2190 Days | March 24, 2007 | 1864 Days | Timely |
| Leonard Hugall | Michigan | 3 Years/1095 Days | October 15, 2007 | 974 Days | Timely |
| Craig Arno | New Jersey | 2 Years/730 Days | November 20, 2007 | 645 Days | Timely |

\* The location in which Defendants' transport of Plaintiff concluded.

\*\* The date on which Defendants' transport of Plaintiff concluded.

\*\*\* As noted above, claim began to accrue on the final day of transport and the SOL ran through February 13, 2008 (the day before the <u>Schilling</u> litigation began to toll the SOL).